**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| H2L2 ARCHITECTS/PLANNERS, LLC, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| TOWER INVESTMENTS, INC. | : | NO.   12-6927 |
| | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

BUCKWALTER, S.J.                                                       August 4, 2014

　　　　Currently pending before the Court is the Motion for Partial Summary Judgment of

Plaintiff H2L2 Architects/Planners, LLC ("Plaintiff") and Defendant Tower Investment

("Defendant")'s Motion for Leave to File Cross-Motion for Summary Judgment Out of Time.

For the following reasons, both Plaintiff's Motion for Partial Summary Judgment and

Defendant's Cross-Motion for Summary Judgment are denied.

**I.    FACTUAL HISTORY[1]**

　　　　Plaintiff is an architecture and planning firm that regularly engages in the research,

development, creation, and sale of architectural designs and drawings.  (Compl. ¶¶ 3–4.)

Defendant is a developer of retail, entertainment, and commercial properties that regularly

engages in the business of constructing residences for housing developments or projects.  (Id. ¶

5; Def.'s Answer and Affirmative Defenses ¶ 5.)  In June 2008, Defendant engaged Plaintiff to

---

[1] The statement of facts is compiled from a review of the parties' briefs and the evidence
submitted in conjunction with those briefs. To the extent the parties allege a fact that is
unsupported by evidence, the Court does not include it in the recitation of facts.

provide professional architectural design services related to a construction project known as The Residences at North Avenue ("the Project").  (Compl. ¶ 8.)  The parties had an oral agreement pursuant to which Plaintiff drafted customized architectural designs and drawings and provided Defendant with copies of the designs and drawings.  (Compl. ¶¶ 9, 18–19.)  Defendant paid Plaintiff for Project invoices totaling $210,881.75, but has not paid three remaining Project invoices totaling $72,989.75.  (Def.'s Mem. Supp. Cross-Mot. Summ. J. 2 nn.3–4.)  The Project invoices at issue in this case are dated April 14, 2009, April 28, 2009, and May 18, 2009.  (Compl. ¶ 12.)  Plaintiff made repeated demands for payment of those three invoices, which remain unpaid.  (Id. ¶ 14.)

Plaintiff filed a five-count complaint on December 11, 2012, alleging (1) breach of contract; (2) in the alternative, quantum meruit/unjust enrichment; (3) violation of the Pennsylvania Contractor and Subcontractor Payment Act, 73 Pa. C.S. § 501, et seq.; and (4) two counts of copyright infringement, seeking injunctive relief and monetary damages.  Defendant moved to dismiss the Complaint on January 6, 2013.  That motion was denied by the Honorable Berle M. Schiller on January 9, 2013.[2]  Defendant filed an Answer with Affirmative Defenses on February 28, 2013.  Plaintiff filed a Motion for Partial Summary Judgment on liability for the breach of contract claim and the Pennsylvania Contractor and Subcontractor Act claim on April 8, 2014.  Defendant's former counsel filed Defendant's Response on April 21, 2014.  Plaintiff filed its Reply in Further Support of Motion for Partial Summary Judgment on April 29, 2014.  Defendant's current counsel filed a Motion for Leave to File Cross-Motion for Summary Judgment Out of Time, moving for summary judgment in its favor regarding the federal copyright claims, on May 23, 2014.  Defendant filed its Errata to its Cross-Motion on May 27,

---

[2] Judge Schiller recused himself from this matter on November 20, 2013.  (Docket No. 18.)  The case was reassigned to this Court on November 21, 2013.  (Docket No. 19.)

2014.  Plaintiff filed its Opposition to Defendant's Motion for Leave to File Cross-Motion for Summary Judgment Out of Time on June 6, 2014.[3]  Defendant filed a Reply Memorandum in Support of its Motion for Leave to File Cross-Motion for Summary Judgment Out of Time on June 11, 2014.  Plaintiff's Motion for Partial Summary Judgment and Defendant's Cross-Motion for Summary Judgment are now ripe for judicial consideration.[4]

## II.   STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  A factual dispute is "material" only if it might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party.  Id.

On summary judgment, the moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145–46 (3d Cir. 2004).  It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations.  Boyle v. Cnty. of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermkts., Inc. v. Darling-Del. Co. Inc., 998 F.2d 1224, 1230 (3d Cir. 1993)).  Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio

---

[3] While the Court is aware of Plaintiff's opposition to the Court's consideration of Defendant's Cross-Motion for Summary Judgment, Plaintiff's arguments on that issue are not discussed in this Opinion in light of the Court's denial of Defendant's Motion.

[4] Neither party moved for summary judgment regarding Count Two of Plaintiff's Complaint, the alternative quantum meruit/unjust enrichment claim.  Accordingly, the Court does not address that claim in this Opinion.

Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987).

Although the moving party must establish an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). It can meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's claims." Id. at 325. If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Moreover, the mere existence of some evidence in support of the non-movant will not be adequate to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-movant on that issue. Anderson, 477 U.S. at 249–50.

Notably, these summary judgment rules do not apply any differently where there are cross-motions pending. Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008). As stated by the Third Circuit, "'[c]ross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.'" Id. (quoting Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968)).

## III.   DISCUSSION

The Court will first address the state law claims on which Plaintiff moved for summary judgment, followed by the federal claim on which Defendant filed its Cross-Motion for Summary Judgment.

A.   **Breach of Contract**

Plaintiff argues that it is entitled to summary judgment on the breach of contract claim because no genuine issue of material fact exists "as to the existence of an enforceable contract between [Plaintiff] and [Defendant], [Defendant]'s material breach of its duty to pay [Plaintiff] under the contract, or the fact and amount of damages caused by [Defendant]'s material breach to [Plaintiff]." (Pl's Mem. Supp. Mot. Summ J. 15.) Plaintiff, relying on the declaration of one of its principals, Mykhaylo Kulnych, maintains that Defendant never objected to the currently unpaid invoices or to paying Plaintiff for the work and services provided, and never notified Plaintiff of any problems with its work. (Id. at 16–17 (citing Declaration of Mykhaylo Kulnych ("Kulnych Decl."), Apr. 3, 2014, ¶¶ 17–18).) Defendant's former counsel responded by arguing that the record facts do not establish that Plaintiff and Defendant had a contract; that Defendant accepted, understood, or materially breached any agreement; or that Defendant is liable for any money allegedly owed because Plaintiff "has not, can not or will not produce the underlying invoice details to establish, at least at the business records exception to hearsay level, that any monies are actually owed for services performed."[5] (Def.'s Resp. Opp'n Summ. J. 1.) Defendant's current counsel does not dispute that the parties had an oral contract (Def.'s Mem. Supp. Cross-Mot. Summ. J. 5), but argues that Plaintiff is not entitled to summary judgment[6] because the following facts "create an issue of fact as to whether [Plaintiff] is entitled to the full

---

[5] Plaintiff eventually supplied Defendant with the invoices at issue, which according to a cover email transmitting the invoices to Defendant "were inadvertently omitted from [Plaintiff's] December 18, 2013 document production." (Pl.'s Reply Supp. Mot. Summ. J., Ex. G, Feb. 17, 2014 Email.)

[6] Defendant also invites the Court to decline to exercise its supplemental jurisdiction over Plaintiff's state law claims because, Defendant argues, Plaintiff's federal claim fails as a matter of law. As the Court is denying Defendant's Cross-Motion for Summary Judgment, and in light of the amount of time the parties have already invested in this dispute's tenure in federal court, the Court will retain jurisdiction over all of Plaintiff's claims.

amount it seeks or whether [Defendant] is entitled to an adjustment for what appears may be 'flogging'": (1) approximately 75% of the contract price sought by Plaintiff was paid; (2) all invoices between June 2008 and April 14, 2009 were paid in full; (3) even during the disputed period of the four invoices issued between April 14, 2009 and May 18, 2009, one invoice was paid in full and there was a partial payment on one of the others; and (4) there was a sudden and dramatic increase in billing by Plaintiff generally and its designer Jeffrey Morris in particular as the contract came to an end.[7]  (Def.'s Mem. Supp. Mot. for Leave to File Out of Time 5.) Plaintiff, in its Opposition to Defendant's Cross-Motion for Summary Judgment, argues that Defendant has not identified any issues of material fact which would preclude Plaintiff's claims, "has failed to refute its corporate designee's abysmal testimony" and the declarations of Plaintiff's corporate designee, and does not refute "any of the many documents showing the parties' course of dealing under their agreement."  (Pl.'s Resp. Opp'n Def.'s Mot. for Leave to File Cross-Mot. Summ. J. Out of Time 7–8.)  According to Plaintiff, "[t]he argument of [Defendant's] newest counsel alone cannot defeat [Plaintiff's] claims."  (Id. at 8.)

A plaintiff asserting a breach of contract claim under Pennsylvania law must establish three elements: the existence of a contract; a breach of a duty imposed by the contract; and resultant damages.  Pennsy Supply, Inc. v. Am. Ash Recycling Corp., 895 A.2d 595, 600 (Pa. Super. Ct. 2006).  In the present case, neither party disputes the existence of a contract, or that according to the parties' oral agreement, Plaintiff would provide architectural designs and drawings to Defendant in return for payment.

---

[7] Defendant notes that "out of the total contract price, over $100,000 (or more than a third of the contract) was billed in the last month of the contract," and that therefore "it is not surprising that [Defendant] was subject to 'sticker shock' at the sudden drastic increase in billings at the end of the engagement."  (Def.'s Mem. Supp. Mot. for Leave to File Out of Time 2 n.2.)

The parties' disagreement stems from three invoices which Plaintiff issued to Defendant, but which Defendant has not paid.  Plaintiff relies on the invoices it created and asserts that Defendant breached their agreement and owes approximately $73,000 for those invoices. Defendant's response relies on average monthly billings compared with the final five weeks of the Project to suggest that Plaintiff drove up the bills as the Project came to an end.  Neither Plaintiff nor Defendant directly addresses or responds the other side's arguments in their briefs. Plaintiff has not submitted evidence to support the appropriateness of the challenged amounts claimed in its invoices, and neither Plaintiff nor Defendant has provided the Court with any real insight into the terms of their oral agreement beyond a most basic understanding that designs and drawings would be exchanged for money.  As a result, it would be inappropriate to grant summary judgment on this claim, and Plaintiff's Motion for Partial Summary Judgment as to the breach of contract claim is denied.

**B.**     **Pennsylvania Contractor and Subcontractor Payment Act**

Plaintiff argues that because it "performed and satisfied the terms of the parties' agreement," because Defendant "has absolutely no evidence to claim that it had any right, based on a deficiency item, to withhold payment from [Plaintiff]," and because Defendant did not object to or complain about the charges or services Plaintiff provided, "as a matter of law, [Defendant] violated the Payment Act, thereby entitling [Plaintiff] to an immediate award of summary judgment."  (Pl.'s Mem. Supp. Mot. Summ. J. at 18.)  Defendant's former counsel[8] responded by arguing that "it is disputed that the parties even had an agreement, if there was an

---

[8] Defendant's current counsel does not directly address the Payment Act claim, other than to argue that the Court should dismiss Plaintiff's federal claim and decline to exercise its supplemental jurisdiction over Plaintiff's state law claims.  See supra note 6.

agreement the terms are still unknown, and Plaintiff has failed to even at least produce hearsay documentation of the alleged damages incurred."  (Def.'s Resp. Opp'n Summ. J. at 6–7.)

The Pennsylvania Contractor and Subcontractor Payment Act provides that a contractor's performance "in accordance with the provisions of a contract" entitles the contractor to payment from the party with whom the contractor has a contract.  See 73 Pa. Cons. Stat. § 504.  An owner "shall pay the contractor strictly in accordance with terms of the construction contract," 73 Pa. C.S. § 505(a), but may withhold payment from the contractor for "deficiency items" so long as the owner notifies the contractor of the deficiency within seven calendar days from the date the invoice was received.  73 Pa. Cons. Stat. § 506(a)–(b).

As with the breach of contract claim, the parties' briefs do not adequately address their opponent's arguments and issues of fact regarding Plaintiff's Payment Act claim.  Plaintiff relies on the deposition testimony of Defendant's corporate designee and argues that his lack of knowledge about evidence to dispute Plaintiff's claims proves that Plaintiff's claims are correct and entitle Plaintiff to summary judgment.  Defendant's former counsel seemed to be arguing that the terms of what is now conceded to be an oral agreement were unclear, and that Plaintiff's invoices were not conclusive evidence of payment owed.  The parties' course of dealing shows that for sixteen invoices, Plaintiff sent the invoices and Defendant paid them.  Thus, according to Plaintiff, the three unpaid invoices are clear evidence of a violation of the Payment Act.  However, Defendant's current counsel has raised issues of fact regarding the disparity between the average monthly bills and the bills for the final five weeks of the project, and questions the propriety of the number of hours billed by one designer in particular.  In light of those factual issues, and the incomplete manner in which both parties have briefed the propriety of Plaintiff's Payment Act claim, Plaintiff's Motion for Partial Summary Judgment as to that claim is denied.

C.    **Copyright Infringement**[9]

Plaintiff alleges that Defendant's actions violated Plaintiff's exclusive copyrights in its

designs, constituting an infringement of Plaintiff's copyrights under 17 U.S.C. § 106.  (Compl.

¶¶ 51–52.)  Defendant argues that the fact that it has paid 75% of the contract price Plaintiff

claims is owed "demonstrate[s] substantial performance under the contract such that a copyright

claim is not maintainable as a matter of law."  (Def.'s Mem. Supp. Mot. for Leave to File Out of

Time at 5.)  According to Defendant, its contract with Plaintiff gave Defendant an implied

license to use the designs and drawings, and a contract dispute over 25% of the fees on a contract

does not create a "material breach" sufficient to overcome an inference of an implied non-

exclusive license for Defendant to utilize the designs and drawings Plaintiff prepared.  (Id. at 6.)

"An 'implied license' shields a defendant from liability for copyright infringement

because if it arises, it means a copyright holder has implicitly consented to the distribution of its

copyrighted work by the defendant."  Malibu Media, LLC v. Does 1, 13, 14, and 16, No.

Civ.A.12-2078, 2013 WL 1702549, at * 5 (E.D. Pa. Mar. 6, 2013).  "There is no conclusive test

for finding an 'implied license' in the Third Circuit, but delivery of a copyrighted work to a

recipient, with an intent that it be distributed, "is one factor that may be relied on in determining

that an implied license has been granted."  Id. (citing MacLean Assocs., Inc. v. Wm. M. Mercer–

Meidinger–Hansen, Inc., 952 F.2d 769, 779 (3d Cir. 1991) (internal quotation marks and citation

omitted)); see also MacLean Assocs., 952 F.2d at 779 ("A nonexclusive license may arise by

implication where the creator of a work at a defendant's request hands it over, intending that the

defendant copy and distribute it.") (internal quotation marks and citation omitted).

Determinations regarding copyright license agreements can affect a federal court's interpretation

_____

[9] Counts Four and Five of Plaintiff's Complaint seek injunctive relief as well as monetary
damages for alleged copyright violations.

of state contract law issues.  In re Spansion, Inc., 507 F. App'x 125, 127 (3d Cir. 2012) (citing Rano for the proposition that "the ability to terminate contracts at will can be limited by federal intellectual property law"); see also Rano v. Cipa Press, Inc., 987 F.2d 580, 585–86 (9th Cir. 1993) (finding that licensing agreements without a stated duration are not terminable at will, because under federal law copyrights expire after thirty-five years thus creating an end date to the licensing contract).  A right to revoke an implied license arises where there is a breach of the agreement that is "so material and substantial in nature that it affects the very essence of the contract and serves to defeat the object of the parties."  See Rano, 987 F.2d at 586.

Defendant maintains that its payments for the designs and drawings Plaintiff prepared gave Defendant an implied non-exclusive license to use them, that nonpayment of 25% of the contract price did not give Plaintiff the right to deem the license terminated, and that because the license was not revoked or terminated, Defendant cannot have infringed Plaintiff's copyright in the designs and drawings.  Specifically, Defendant argues that "[a]n issue of 'sticker shock,' howver [sic], at the end of a long relationship in which over $200,000 was paid certainly does not qualify as 'a total failure' in the performance of the contract."  (Def.'s Mem. Supp. Cross-Mot. Summ. J. at 10.)  Plaintiff, in its Opposition Memorandum, focuses on the alleged impropriety of Defendant's late-filed Cross-Motion for Summary Judgment, and does not address Defendant's arguments regarding the existence of an implied non-exclusive license and the effect such a license between the parties would have on the viability of Plaintiff's federal claim.  Defendant responds to Plaintiff's argument with the statement that Plaintiff's response is "long on expressions of frustration and short on law" and that Plaintiff does not dispute the facts or law relevant to Defendant's arguments regarding the federal copyright claim.  (Def.'s Reply Supp. Mot. for Leave to File Cross-Mot for Summ. J. Out of Time at 1.)  As the parties have

again failed to address the factual issues raised and respond to each other's arguments, the Court will deny Defendant's Cross-Motion for Summary Judgment as to Plaintiff's federal copyright claims.

## IV.        CONCLUSION

Neither Plaintiff nor Defendant meets the standard for granting summary judgment in its favor with respect to the claims for which they moved for summary judgment.  Accordingly, and in light of the foregoing, Plaintiff's Motion for Partial Summary Judgment is denied and Defendant's Cross-Motion for Summary Judgment is also denied.

An appropriate Order follows.